### CITY OF SWEETWATER v. DADE COUNTY.
No. 75-30865-05.

Circuit Court, Dade County.

March 3, 1976.

John G. Fletcher, Miami, for the plaintiff.

Stuart L. Simon, County Attorney, Lisa Bennett, Assistant County Attorney, for the defendant.

JAMES W. KEHOE, Circuit Judge.

*Final judgment on the pleadings:* The municipality of Sweetwater commenced this cause by filing its complaint seeking declaratory and other relief against the county. The complaint essentially asked the court to declare that the city's purported annexation of approximately five acres of real property adjacent to its municipal borders was legal and valid and had the effect of incorporating the land within the municipal boundaries. The complaint further asked that the county be required to impose the city's municipal ad valorem tax millage within and upon the five acres comprising the subject matter of this litigation, and that the county be required to relinquish its zoning, police and fire protection authority within the area which the city contended was now within its municipal jurisdiction. The defendant county's answer and statement of affirmative defense made clear that the county's opposition to the city's annexation was based on the contention that the statute upon which the city relied for authority to annex the subject land was inapplicable to Dade County or unconstitutional as applied to Dade County. Thereafter, the county moved for judgment on the pleadings, contending that there were no material issues of fact and that the county was entitled to judgment as a matter of law.

The cause came on to be heard and considered by the court on the aforesaid motion for judgment on the pleadings. Both parties to this cause conceded during the proceedings that there were no factual matters in dispute and that judgment on the pleadings should be entered as a matter of law either in favor of the plaintiff city or the defendant county. The court hereby enters judgment on the pleadings in favor of the defendant county.

The city's position was that its annexation of the subject land was effected by ordinances enacted pursuant to the authority

granted by Section 171.16, Florida Statutes. On the date of the purported annexation, this section read as follows —

*Supplemental procedure for annexation. —*

(1) The owner or owners of real property in an unincorporated area of a county which is contiguous to a municipality may petition the governing body of said municipality that said property be annexed to the municipality.

(2) Upon determination by the governing body of the municipality that the petition bears the signatures of all owners of property in the area proposed to be annexed, the governing body may, at any regular meeting, adopt a nonemergency ordinance to annex said property and redefine the boundary lines of the municipality to include said property. Said ordinance shall be passed after same has been published once a week for four consecutive weeks in some newspaper in such city or town; or if no newspaper is published in said city or town, then in a newspaper published in the same county; and if no newspaper is published in said county, then at least three printed copies of said ordinance shall be posted for four consecutive weeks at some conspicuous place in said city or town.

(3) An ordinance adopted hereunder shall be filed with the clerk of the circuit court of the county in which the municipality is located and with the department of state.

(4) The method of annexation provided by this section shall be supplemental to any other procedure provided by general or special law.

The county contended that the quoted statute was inapplicable to Dade County and the municipalities within it, or was unconstitutional as applied to Dade County because (a) the Dade County Home Rule Amendment to the Florida Constitution authorized the county in subsection 1(c) thereof to provide a method in its charter for changing the boundaries of Dade County municipalities, and (b) the implementing Home Rule Charter in Section 5.04 thereof prescribed an exclusive method for changing municipal boundaries in Dade County, a method which had not been followed by the plaintiff city in this instance.

In holding that the purported annexation by the city is invalid, the court bases its determination on the two fundamental grounds discussed below —

1. It appears to the court that the Dade County Home Rule Amendment to the Florida Constitution gives the county local autonomy and authority in those specific governmental areas designated in subsections 1(a) through (i) of the Home Rule Amend-

ment. Under that constitutional amendment general state legislation applicable to Dade County and at least one other county takes precedence over conflicting provisions in the county charter and ordinances, except when the Home Rule Amendment expressly provides to the contrary by exception to the general rule. Those governmental areas designated in subsections 1(a) through (i) of the Dade County Home Rule Amendment are the excepted areas in which the county's charter and ordinances take precedence over general state law. Subsections 1(a) through (i) of the Home Rule Amendment thus constitute the specific areas of autonomy and authority over local affairs conferred upon the board of county commissioners of Dade County by the Dade County Home Rule Amendment to the Florida Constitution. *Chase v. Cowart* (Fla. 1958) 102 So.2d 147; *Gray v. Golden* (Fla. 1956) 89 So.2d 785; *State v. Dade County* (Fla. 1962) 142 So.2d 79; *In Re Advisory Opinion to the Governor* (Fla. 1959) 116 So.2d 425; *Dade County v. Young Democratic Club of Dade County* (Fla. 1958) 104 So.2d 636.

The city concedes that Dade County has areas of autonomy and authority over local affairs, but contends that such areas exist in the face of conflicting state law only when the conflicting state law was enacted prior to the adoption of the county's Home Rule Amendment in 1956. This argument is based on the proposition that subsection (5) of the Home Rule Amendment, which excepts subsections 1(a) through (i) from the rule that general state law will prevail because of the phrase "except as expressly authorized in this section," applies only to general laws in effect at the time the Home Rule Amendment was adopted. This argument goes on to maintain that subsection (6) of the Home Rule Amendment does not contain the language "except as expressly authorized in this section," and therefore curtails the county's power to depart from general state law in the areas designated in subsections 1(a) through (i) when the general state law has been enacted subsequent to the adoption of the Home Rule Amendment.

The court rejects this argument for a number of reasons. First, subsection (9) of the Dade County Home Rule Amendment makes clear that the phrase "except as expressly provided herein" is to be read into both subsections (5) and (6) of the Home Rule Amendment through the doctrine of "in pari materia." The language of subsection (9) of the Home Rule Amendment is quoted below —

It is declared to be the intent of the Legislature and of the electors of the State of Florida to provide by this section home rule for the people of Dade County in local affairs and this section shall be liberally construed to carry out such purpose, and it is further declared to be the

intent of the Legislature and of the electors of the State of Florida that the provisions of this Constitution and general laws which shall relate to Dade County and any other one or more counties of the State of Florida or to any municipality in Dade County and any other one or more municipalities of the State of Florida enacted pursuant thereto by the Legislature shall be the supreme law in Dade County, Florida, *except as expressly provided herein* and this section shall be strictly construed to maintain such supremacy of this Constitution and of the Legislature in the enactment of general laws pursuant to this Constitution. (Emphasis added)

Second, the language in the cases cited above makes clear that the Supreme Court of Florida has always regarded subsections 1(a) through (i) in the Home Rule Amendment as Dade County's permanent areas of local autonomy and authority rather than as constantly diminishing areas which are to grow smaller over the years as the legislature enacts an ever-growing body of post-1956 general laws. This is made clear in *State ex. rel. Gissendanner v. Leatherman* (DCA 3, 1970) 237 So.2d 820, and in *Seminole Rock Products v. Town of Medley* (Fla. 1965) 180 So.2d 457. Third, the county's position would appear to be consistent with a logical interpretation of organic provisions while the city's does not. The court finds it difficult to believe that the legislature and the people of Florida intended to confer areas of autonomy and authority in local affairs upon the elected representatives of the people of Dade County in 1956 and then to have those areas continually whittled away over the subsequent years as the state legislature enacts an ever-increasing number of general laws applicable on a state-wide basis. The re-adoption of the Dade County Home Rule Amendment in Article VIII, Section 6(e) of the Constitution of 1968 renders the city's argument untenable.

2. The city contends that Section 171.16, Florida Statutes, creates merely another or supplemental method of municipal annexation to that outlined in Section 5.04 of the county's Charter which recites as follows —

### CHANGES IN MUNICIPAL BOUNDARIES

A. The planning director shall study municipal boundaries with a view to recommending their orderly adjustment, improvement, and establishment. Proposed boundary changes may be initiated by the Planning Advisory Board, the Board of County Commissioners, the governing body of a municipality, or by a petition of any person or group concerned.

B. The Board of County Commissioners, after obtaining the approval of the municipal governing bodies concerned, after hearing the recommendations of the Planning Advisory Board, and after a public hearing,

may by ordinance effect boundary changes, unless the change involves the annexation or separation of an area of which more than 250 residents are electors, in which case an affirmative vote of a majority of those electors voting shall also be required. Upon any such boundary change any conflicting boundaries set forth in the charter of such municipality shall be considered amended.

C. No municipal boundary shall be altered except as provided by this section.

The city contends that the Home Rule Amendment authorizes the county's charter to contain *a method* for altering municipal boundaries. The city argues that the Home Rule Amendment uses the phrase "a method" rather than the phrase "the method," and that therefore the county charter cannot prescribe a sole and exclusive method for altering municipal boundaries. This court disagrees. When the organic provision authorizes the county to adopt a method for altering municipal boundaries, and the County Home Rule Charter then implements the constitutional provision with a clear statement of the method to be used, that method becomes the sole and exclusive method. When the charter prescribes the manner in which a thing shall be done, this constitutes a prohibition against a different manner of doing it, *Weinberger v. Board of Public Instruction of St. John's County* (Fla. 1927) 112 So. 253. The court therefore finds and determines that the county's charter which prescribes an exclusive method for altering municipal boundaries is lawful and proper under the law and not in conflict with the Home Rule Amendment.

The county argued several other points in support of its position. Since the single issue in this case can be determined by the court without consideration of these further legal contentions, the court will abstain from ruling upon them.

Accordingly, the court orders and decrees as follows —

(1) The purported annexation by the City of Sweetwater of the five acres of real property involved in this cause is hereby held invalid.

(2) The method of municipal annexation set forth in Section 5.04 of the Dade County Charter presently constitutes the exclusive method of modifying municipal boundaries in Dade County.

(3) Subsections 1(a) through (i) of the Home Rule Amendment constitute those organic areas of autonomy and authority in local affairs conferred upon Dade County by the Florida Constitution and may not be diminished and curtailed by general laws of the state enacted after 1956.